## Turnipseed *v.* Drummond, Adm'r.

Mar. 23, 1953

No. 38709 25 Adv. S. 61 63 So. 2d 536

*Russell Wright,* for appellant.

*S. M. Graham,* for appellee.

McGEHEE, C. J.

On June 23, 1950, Jane Thompson Fikes, who was in her nineties and referred to as "the oldest Negro woman in the City of Meridian," went to the office of an attorney in company with the appellant Alberta Fikes Turnipseed, who was her niece, and where they obtained legal advice as to how they could arrange for the appellant to draw checks on the funds of "Aunt Jane" for the payment of the bills of the latter who was sometime unable to go to town for that purpose. They were advised by the attorney that "Aunt Jane" could put the funds which she then had on deposit in two banks of the city into one account in her name and that of the appellant with the right of survivorship, the attorney having understood, and offered to testify at the trial, that "Aunt Jane" wanted the appellant to have whatever money there was left at her death. The record is silent as to whether "Aunt Jane" meant by the words "whatever money was left," that which would be left after the payment of her debts and funeral expenses, except for certain admissions (which will be hereinafter related more in detail) made by the defendant to other relatives of "Aunt Jane" after the latter's death in regard to why the joint account was established.

On that same day "Aunt Jane" and the appellant established the joint account at the Citizens National Bank, Meridian, Mississippi, where "Aunt Jane" had a balance of $47.01 on deposit and to which she added a deposit of $560.00 which she had that day withdrawn from the First National Bank in Meridian for that pur-

pose, the joint account being established in the name of Jane Fikes or Alberta Fikes, but the deposit card being signed on that day at the bank by "Jane Fikes, Alberta Fikes Turnipseed" and contained among other provisions the following: "The undersigned agree and declare that all funds now, or hereafter, deposited in this account are, and shall be, our joint property and owned by us as joint tenants with the right of survivorship, and not as tenants in common; and upon the death of either of us any balance in said account shall become the absolute property of the survivor. The entire account or any part thereof may be withdrawn by, or upon the order of, either of us or the survivor. It is especially agreed that withdrawals of funds by the survivor shall be binding upon heirs, next of kin, legatees, assigns, and personal represenattives."

"Aunt Jane" lived until about November 24, 1950, and in the meantime there had been only two checks drawn on this joint account, one for $21.75 and one for $2.00, bearing date of August 28, 1950. At the time of the death of "Aunt Jane" there was a balance in the account of $647.49; and this amount was withdrawn from the bank by the appellant on December 6, 1950, the day following the appointment of the appellee D. C. Drummond as administrator of the estate of Jane Thompson Fikes, deceased.

It was alleged in the bill of complaint of the administrator and admitted in the answer of the defendant Alberta Fikes Turnipseed that the latter did not pay the burial expenses of "Aunt Jane," which the proof disclosed was the sum of $390.00, and it was shown that other unpaid bills were found in "Aunt Jane's" house after her body was found in the house a few days after her death.

The suit was for the recovery of the said sum of $647.49 and the case was transferred to the circuit court for trial on motion of the defendant and without objection on the part of the complainant. At the trial in the circuit court

the plaintiff offered ample proof to go to the jury on the issue of mental incapacity on the part of "Aunt Jane" to have entered into a valid contract with the defendant such as is evidenced by the deposit card whereby the joint account was established. There was also introduced on behalf of the defendant a number of witnesses to establish the contrary view, and to thus present an issue of fact for the jury in that behalf.

The proof on behalf of the plaintiff further disclosed that after the death of "Aunt Jane" the defendant was approached by other relatives and asked, "Do you think you did right about the money?" Her answer was, "What, the way it was used, Aunt Jane and I made a joint account that I using to pay her debts and her funeral out of the money"; that further complaint was made to the defendant in these words: "Now, you got that certificate, and you carried Aunt Jane and had it made a joint account. Do you think that was right to try to take it"; and that the defendant's answer was, "Well, I am going to pay her funeral bill and the debts with the money." As heretofore stated, it was alleged in the original bill of complaint in the chancery court, which was treated as a declaration in the circuit court, and was admitted in the answer of the defendant filed in the circuit court, that the defendant has never paid the funeral bill, and it was not shown on behalf of the defendant that she has paid the other unpaid bills that were found after the death of "Aunt Jane."

The bill of complaint, which was later treated as the declaration in the circuit court as aforesaid, charged, among other things, that: "The deceased had a bank account in the Citizens National Bank in Meridian, Miss., No. 14936, and the defendant went to the home of deceased June 23, 1950, and professed friendship and relationship to and for deceased, at a time when deceased was suffering from senile dementia, and persuaded the deceased to go with defendant to said bank and change said

account into a joint account in the names of deceased and the defendant under the pretext that deceased would have to have her burial expenses paid, and unless deceased put deceased's money in a joint account, there would be no one who could pay deceased burial expenses and thus persuaded deceased to so place her money in said bank on June 23, 1950.''

The defendant in her answer denied that she went to the home of the deceased on June 23, 1950, at a time when deceased was suffering from senile dementia, and persuaded the deceased to go with defendant to said bank and change said account into a joint account for the purpose alleged in the foregoing quoted paragraph. The only proof offered by the plaintiff to sustain the charge that the defendant went to the home of the deceased on that day and persuaded her to go with the defendant to the bank and change the account into a joint account, was in the nature of circumstantial evidence in that regard, it having been shown without dispute that the defendant on that day accompanied "Aunt Jane" to the office of the attorney and that they both signed the deposit card at the bank on that day following the conference with the attorney, and also that "Aunt Jane" would get lost on many occasions when she left her house alone.

The proof as to what occurred at the office of the attorney, and the testimony of the attorney as to the mental capacity of "Aunt Jane" to have made a valid contract with the defendant, was heard out of the presence of the jury and was excluded. In other words, the attorney was denied the right to testify because of the relationship of attorney and client, and the denial of this right is assigned as error on the ground that the conference was had between the attorney and both of the other parties, and was in regard to a matter which they both made public by going to the bank and acting on the advice given by the attorney.

Numerous other errors are assigned, including the giving of an instruction for the plaintiff in the following words: "The court charges the jury for the plaintiff that if you believe from a preponderance of the testimony that defendant, Alberta Fikes Turnipseed, overreached Jane Thompson Fikes, in having Jane Thompson Fikes deposit in the Citizens National Bank in Meridian, Miss., changed to the joint account of Jane Thompson Fikes and Alberta Fikes Turnipseed, and that Alberta Fikes Turnipseed, has failed and neglected to do what she promised the deceased to do if anything when said account was made a joint account, then it will be your sworn duty to find for the plaintiff in the sum of $647.49 and legal interest."

We deem it necessary to discuss only the two errors above complained of, in fact, we do not think that any other error was committed on the trial, which resulted in a verdict for the plaintiff in the amount sued for.

In the case of Nebhan v. Mansour, et al., 162 Miss. 418, 139 So. 166, it was held that the privileged communication rule between attorney and client does not apply unless consultations are confidential; that where they take place in the presence of a third person, they are not confidential and are not intended to be so. Citing 28 R. C. L. 561; 40 Cyc. 2377; 5 Wigmore on Evidence, Sec. 2311. In that case the attorney, who advised a testator about the making of his will, prepared the will for him, (and whom the Court erroneously stated in its original opinion was present when it was signed by the testator and attested by the witnesses), and the Court said that: "His testimony was very material on the issue of the testator's mental capacity. It was objected to by the appellant on the ground that it was privileged, being a communication between attorney and client. The evidence showed that, at the time Mr. Dunn consulted with the testator and prepared his will, and saw to its proper execution and attestation, there was another person present, not a bene-

ficiary under the will, and who had no interest in what occurred, except one of friendship for the testator.'' On the suggestion of error the Court corrected its statement as made in the original opinion, and recognized that Mr. Dunn was not present when the will was signed and attested, but held that this made no difference since the matters that Mr. Dunn testified about took place in the presence of Caldwell and others at the time he advised with the testator and prepared his will; that what occurred on that occasion was not privileged as being confidential. In the instant case, the other party who was present with the attorney and ''Aunt Jane'' was interested in what was proposed to be done, but as to that there was publication when ''Aunt Jane'' and this party went to the bank and signed the deposit card, establishing the joint account.

In 58 Am. Jur., Section 496, page 277, it was said among other things that: ''By selecting the same attorney, each party waives his right to place those communications under the shield of professional confidence. Either party may introduce testimony concerning the same as against the other, or his heirs or representatives. * * * Thus, if two or more persons consult an attorney at law for their mutual benefit, and make statements in his presence, he may disclose those statements in any controversy between them or their personal representatives or successors in interest. The rule is the same where the witness is attorney for only one of the parties. Communications made between persons who afterwards become opposing parties in litigation, made in the presence of the attorney of one of them, as well as communications made (or advice given) by such attorney to his client in the presence of the opposing party, are not subject to a claim of privilege by such opposing party.''

We do not think that under the facts of the instant case it can be said that ''Aunt Jane'' intended that the knowledge gained by her attorney as to her mental capacity or

as to what she wanted done for the mutual benefit of herself and the other party present was intended to be kept in confidence, and especially in view of the fact that they both left the office of the attorney with the intention of jointly carrying out his advice, which was accordingly done. The jury was entitled to the benefit of the attorney's testimony on the issue of "Aunt Jane's" mental capacity on the day that they later entered into the written contract out of his presence.

We are of the opinion that the instruction complained of was erroneous in that it authorized the jury to find for the plaintiff if the jurors believed from a preponderance of the evidence that the defendant failed and neglected to take care of "Aunt Jane" after the joint account was established, and that the instruction is also erroneous in authorizing the jury to find that the defendant had "overreached" her aunt in getting the joint account established. The testimony disclosed that "Aunt Jane" had acted on the advice of a good friend, a white person at the office of the Mississippi Power Company, in arranging with someone to help look after her business, and that she later reported to this lady, when accompanied by the defendant, that "this is some of my people, and she is going to look after me"; and the proof further shows by the testimony of the attorney which was improperly excluded, that "Aunt Jane" acted on the advice of the attorney on the day that she joined in establishing the joint account at the bank, with the right of survivorship. In other words, there is no substantial evidence that the defendant "overreached" her aunt in having her to change her deposits to a joint account. The proof on behalf of the plaintiff merely shows that the defendant had admitted after the death of "Aunt Jane" that they had made a joint account in order that the defendant might pay "Aunt Jane's" debts and funeral expenses out of the money. ▉▉▉ There is a difference between fraudulently inducing a person to enter into a contract by

promises not intended to be kept, and one overreaching the other contracting party due to her want of mental capacity. The instruction is misleading and should not have been given.

Because of the errors above discussed the cause must be reversed and remanded for a new trial.

Reversed and remanded.

*Kyle, Holmes, Ethridge* and *Lotterhos, JJ.,* concur.